IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MORAN INDUSTRIES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 07 C 6092 |
| v. | ) | |
| | ) | |
| JAMES C. HIGDON, CHRISTIAN | ) | Judge Ronald A. Guzmán |
| HIGDON, KAREN HIGDON, URICK | ) | |
| THAMELING, HIGDON & HIGDON, | ) | |
| INC., THAMELING & HIGDON LLC, | ) | |
| and MASTERS TRANSMISSION & | ) | |
| AUTO REPAIR, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF OPINION AND ORDER

Moran Industries, Inc. has sued defendants James C. Higdon, Karen Higdon, Christian Higdon, Urick Thameling, Higdon & Higdon, Inc., Thameling & Higdon, LLC and Masters Transmission & Auto Repair for their alleged breaches of various contracts, tortious interference with contract and trademark infringement. The case is before the Court on defendants' motions pursuant to Federal Rule of Civil Procedure ("Rule") 12 (b)(2) and (3) to dismiss the complaint for lack of personal jurisdiction and improper venue. For the reasons set forth below, the Court grants the motions.

## Facts

Plaintiff is an Illinois corporation and the franchisor of the "Mr. Transmission Service Centers" and the "Milex Tune Up & Brake Service Centers." (Compl. ¶ 3.) Plaintiff owns and has registered with the U.S. Patent and Trademark Office the "Mr. Transmission" and "Milex" trademarks, service marks and trade names. (*Id.* ¶ 18.)

Defendants James C., also known as Clayton, Higdon and Karen Higdon are a married couple who live in Indiana. (*Id.* ¶¶ 4,6.) Defendant Christian Higdon, who is also an Indiana resident, is their son. (*Id.* ¶¶ 5-6.)

Karen is an officer of defendant Masters Transmission & Auto Repair ("Masters Transmission"), which is a Kentucky corporation with its principal place of business in Kentucky. (*Id.* ¶¶ 6, 10.)

Defendant Urick Thameling lives in Kentucky, and he and James are the members of defendant Thameling & Higdon, LLC ("T&H"), an Indiana limited liability company with its principal place of business in Kentucky. (*Id.* ¶¶ 7, 9.)

Defendant Higdon & Higdon, Inc. ("H&H") is an Indiana corporation with its principal place of business in Indiana. (*Id.* ¶ 8.)

**The Hixson Franchise**

On March 4, 2002, plaintiff entered into a franchise agreement with H&H for the operation of a Mr. Transmission franchise in Hixson, Tennessee. (*Id.* ¶ 22.) James and Christian personally guaranteed H&H's performance under that agreement. (*Id.* ¶ 23.) Subsequently, Moran and H&H entered into a co-brand franchising addendum, which gave H&H the right to operate a Milex Tune Up & Brakes franchise at the same location. (*Id.* ¶ 24.) Among other things, those agreements required H&H to pay Moran a weekly royalty of five percent of the Hixson sales and barred H&H, James and Christian from being involved in a competing business within twenty-five miles of Hixson for two years after the agreements ended. (*Id.* ¶¶ 25-26.)

2

On June 16, 2006, because of past due royalties, H&H executed a promissory note in favor of Moran in the amount $17,982.07 plus interest. (*Id.* ¶ 30.) James and Christian personally guaranteed the note. (*Id.*)

By March 2007, H&H was in default under the Hixson franchise agreement and note. (*Id.* ¶ 57.) On June 26, 2007, H&H stopped operating the franchise. (*Id.* ¶ 58.) Subsequently, Moran sent H&H, James and Christian a notice of default. (*Id.* ¶ 59.) Because defendants failed to cure the defaults, on July 30, 2007, Moran sent them a notice terminating the franchise agreement. (*Id.* ¶¶ 60-61.) As of September 2007, H&H owed Moran more than $22,000.00 under the Hixson franchise agreement and note. (*Id.* ¶¶ 62-63.)

**The Middletown Franchise**

On August 2, 2005, Nerak, Inc., a Kentucky corporation allegedly operated by James and Karen, entered into a franchise agreement with Moran to operate a Mr. Transmission franchise in Middletown, Kentucky. (*Id.* ¶ 32.) James operated the Middletown franchise for Nerak from September 2005 through May 2006. (*Id.* ¶ 33.)

On May 26, 2006, James and Urick established T&H. (*Id.* ¶ 34.)

On June 1, 2006, Moran entered into two agreements with T&H. (*Id.* ¶¶ 37, 40.) The first, which allowed T&H to operate the Mr. Transmission franchise in Middletown, superseded the franchise agreement between Moran and Nerak and was personally guaranteed by James. (*Id.* ¶¶ 37-39.) The second allowed T&H to operate a Milex Tune Up & Brakes franchise at the same location. (*Id.* ¶ 40.) Two weeks later, the parties amended the agreements to add Urick as an additional franchisee. (*Id.* ¶ 41.)

3

Among other things, the Middletown agreements required T&H and Urick to pay Moran a weekly royalty of five percent of the Middletown sales and barred T&H, James and Urick from being involved in a competing business within twenty-five miles of Middletown for two years after the agreements ended. (*Id.* ¶¶ 42-43.)

On June 14, 2006, because of past due royalties, Nerak and James executed a promissory note in favor of Moran in the amount $43,718.94 plus interest. (*Id.* ¶ 47.)

On August 27, 2007, James and Karen incorporated Masters Transmission and, less than a month later, James, Karen and Urick began to operate Masters Transmission at the Middletown location previously occupied by the Mr. Transmission/Milex franchise. (*Id.* ¶¶ 68-69.) James operates Masters Transmission using the telephone numbers assigned to the Middletown Mr. Transmission/Milex franchise and Moran's proprietary marks and materials. (*Id.* ¶¶ 71-73.)

As of October 3, 2007, T&H, James and Urick owed Moran more than $54,000.00 on the Middletown note. (*Id.* ¶ 74.)


**The Cleveland Franchise**

On June 20, 2006, H&H entered into two agreements with Moran. (*Id.* ¶¶ 49, 51.) The first was to operate a Mr. Transmission franchise in Cleveland, Tennessee and was personally guaranteed by James and Christian. (*Id.* ¶¶ 49-50.) The second was to operate a Milex Tune Up & Brakes franchise at the same location. (*Id.* ¶ 51.) These agreements required H&H to pay Moran a weekly royalty of seven percent of the Cleveland sales and barred H&H, James and Christian from being involved in a competing business within twenty-five miles of Cleveland for two years after the agreements ended. (*Id.* ¶¶ 52-53.)

4

By March 2007, H&H, James and Christian were in default under the Cleveland franchise agreement. (*Id.* ¶ 64.) H&H abandoned the franchise on June 1, 2007 and, as of September 27, 2007, owed Moran nearly $14,000.00 under the Cleveland agreement. (*Id.* ¶¶ 66-67.)

Moran filed this suit to recover for defendants' alleged breaches of the parties' various agreements, tortious interference and trademark infringement. Defendants contend that the Court lacks personal jurisdiction over them or is the wrong venue for this suit.

## Discussion

To defeat a Rule 12(b)(2) motion to dismiss, plaintiff must make a *prima facie* case of personal jurisdiction. *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980). In determining whether plaintiff has done so, the Court accepts as true "all well-pleaded jurisdictional allegations in the complaint . . . unless [they are] controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). To defeat a Rule 12(b)(3) motion to dismiss, plaintiff must "establish that venue is proper." *Faur v. Sirius Int'l Ins. Corp.*, 391 F. Supp. 2d 650, 657 (N.D. Ill. 2005). As with an attack on personal jurisdiction, when venue is challenged, the Court "may examine facts outside the complaint . . . to determine whether venue is proper." *Id.*

## Motion of James, Christian, Urick, H&H and T&H

Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants only if the forum-state court would have such jurisdiction. *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). Illinois courts can "exercise jurisdiction on any . . . basis now or

hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 Ill. Comp. Stat. 5/2-209(c). Because the state and federal standards are not substantively different, *see Hyatt*, 302 F.3d at 715, the Court will address only the federal.

Before doing so, however, the Court must address plaintiff's contention that James, Christian, Urick, H&H and T&H waived their objections to personal jurisdiction by virtue of the forum-selection clauses in the agreements they signed. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (noting that objections to personal jurisdiction are waivable and that "litigant[s] may give express or implied consent to the personal jurisdiction of the court" through forum-selection clauses) (quotation omitted); *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1292 n.4 (7th Cir. 1989) ("Obviously, a valid forum-selection clause, even standing alone, can confer personal jurisdiction.") To determine whether defendants have waived their objections, we must first decide whether the clauses are, indeed, forum-selection clauses.[1]

That determination hinges on the language of the clauses. If they contain mandatory language, then the parties have selected a particular forum. *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992). If they contain permissive language, then the parties have identified a potential forum, not designated an exclusive one. *Id.*

In relevant part, the franchise agreements, signed by H&H, T&H and Urick, state:

---

[1] Before we can make those determinations, however, we must decide whether these issues are governed by federal or state law. The Seventh Circuit has suggested that federal law governs. *See N.W. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir.1990) (noting that the issue of validity of a forum selection clause is "[p]robably" one of federal law). Because there is little difference between federal and Illinois law, *compare, e.g., Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (clause is valid if mandatory language is used and enforceable if it is reasonable and was not procured by fraud), *with Calanca v. D & S Mfg. Co.*, 510 N.E.2d 21, 23 (Ill. App. Ct. 1987) (same), the Court will use federal.

The parties have finalized the Agreement in the City of Midlothian, County of Cook, State of Illinois, and agree that this contract and their actions hereunder shall be governed by and construed in accordance with the laws of the State of Illinois. The FRANCHISEE agrees and consents to the jurisdiction and venue of the United States District Court for the Northern District of Illinois and/or any court of record of Cook County, Illinois, with respect to any proceedings which arise out of or are connected in any way with the operation of the MR. TRANSMISSION SERVICE CENTER licensed hereunder.

(Compl., Ex. A, Hixson Franchise Agreement ¶ 34; *id.*, Ex. D, Middletown Franchise Agreement ¶ 34; *id.*, Ex. F, Addition of Urick J. Thameling as Franchisee ¶ 2; *id.*, Ex. H, Cleveland Franchise Agreement ¶ 34.) Although the choice of law language – "[T]his contract . . . shall be governed by . . . the laws of the State of Illinois" – is mandatory, the forum selection language – "The FRANCHISEE . . . consents to the jurisdiction and venue of the United States District Court for the Northern District of Illinois" – is not. Because the parties' agreements permit but do not mandate the use of an Illinois court, defendants did not waive their objections to personal jurisdiction by signing them.

That leaves the question of whether it is appropriate for the Court to exercise personal jurisdiction over these defendants. The Court can do so if the defendant has sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). If a "defendant has continuous and systematic general business contacts with the forum," he is subject to that forum's general jurisdiction and can be sued there for any cause of action. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003) (quotation omitted). If defendant's purposeful contacts with the forum are more limited, he is subject to its specific jurisdiction and can be sued there only if the suit arises out of those specific contacts. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

7

The record establishes that James, Christian, Urick, H&H and T&H's contacts with this forum and their business relationships with the forum-resident plaintiff are sufficient to allow the Court to personal jurisdiction over them. H&H entered into two twenty-year agreements with Moran, an Illinois corporation, to operate "Mr. Transmission/Milex" franchises in Hixson and Cleveland, Tennessee, respectively. (Compl., Ex. A, Hixson Franchise Agreement at 1 & ¶ 3; *id.*, Ex. B, Co-Branding Franchise Agreement ¶¶ G, 2C; *id.*, Ex. H, Cleveland Franchise Agreement at 1 & ¶ 3; *id.*, Ex. I, Co-Branding Franchise Agreement ¶¶ G, 2C. ) James and Christian personally guaranteed H&H's performance of those agreements. (*Id.*, Ex. A, Hixson Franchise Agreement, Guarantee; *id.*, Ex. H, Cleveland Franchise Agreement, Guarantee.) Similarly, T&H and Urick entered into a twenty-year agreement with Moran to operate a "Mr. Transmission/Milex" franchise in Middletown, the performance of which James personally guaranteed. (*Id.*, Ex. D, Middletown Franchise Agreement at 1, ¶ 3 & Guarantee; *id.*, Ex. E, Co-Branding Franchise Agreement ¶¶ G, 2C; *id.*, Ex. F, Addition of Urick Thameling as Franchisee.) Those agreements required defendants, among other things, to: (1) send royalty payments to Illinois every week; (2) send a variety of weekly and monthly reports and any notices required under the contracts to Illinois; (3) send the H&H and T&H "owner-investor[s"] to franchise management training school in Illinois; (4) accept from Moran whatever supervisory assistance it deemed appropriate and adhere to its appearance, quality and service standards; (5) purchase all equipment and supplies from a vendor designated by Moran; (6) use only repair order and sales invoice forms provided by Moran; (7) purchase a computer system from Moran and pay it monthly for the use of its software; (8) maintain insurance that named Moran as an insured; and (9) permit Moran to audit their books and investigate their operations at anytime. (*Id.*, Ex. A, Hixson Franchise Agreement ¶¶ 6(g), (i), 7-8, 11-13, 18, 33, 38;

*id.*, Ex. D, Middletown Franchise Agreement ¶¶ 6(g), (i), 7-8, 11-13, 18, 33, 38; *id.*, Ex. H, Cleveland Franchise Agreement ¶¶ 6(g), (i), 7-8, 11-13, 18, 33, 38.) Moreover, the agreements say they were "finalized . . . in the City of Midlothian, County of Cook, State of Illinois," contain Illinois choice-of law provisions and the consents of H&H, T&H and Urick to the jurisdiction and venue of Illinois courts. (*Id.*, Ex. A, Hixson Franchise Agreement ¶ 34; *id.*, Ex. D, Middletown Franchise Agreement; *id.*, Ex. F, Addition of Urick Thameling as Franchisee; *id.*, Ex. H, Cleveland Franchise Agreement ¶ 34.)

Further, James testified that he initiated the twenty-year term relationships with Moran, and during its existence he: regularly sent reports to Illinois, called the Illinois office for technical support and sent royalty payments there weekly. (Pl.'s Resp. Opp'n Mot. Dismiss James, Christian, Urick, H&H & T&H, Ex. A, James Dep. at 62-63, 68-71, 79-82, 91-94, 102-06.) Urick testified that he attended manager training school in Illinois, received materials from Moran and sometimes called Moran employees in Illinois for technical support. (*Id.*, Ex. B, Urick Dep. at 34-35, 46-49.) Similarly, Christian testified that he sent mail to and received it from Moran, received some customer support from Illinois, sent royalty payments and reports to Illinois weekly, and attended manager training school there. (*Id.*, Ex. C, Christian Dep. at 40-47, 54-63, 74-75.)

In short, both the documents they signed and their testimony about their relationships with Moran demonstrate that James, Christian, Urick, H&H & T&H had continuous, substantive contact with Moran in this state. Those contacts are sufficient justify this Court's exercise of jurisdiction over them. Their motion to dismiss for lack of personal jurisdiction is, therefore, denied.

Even if the Court has jurisdiction over them, these defendants argue that it is not the proper venue for the suit. Plaintiff's claims implicate both the Court's federal question and its diversity

9

jurisdiction. In the context of this case, venue for either kind of claim is proper in "a judicial district in which a substantial part of the acts or omissions giving rise to the claim[s] occurred." 28 U.S.C. § 1391(a)(2), (b)(2); *see Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) (stating that courts should "focus on relevant activities of the defendant, not of the plaintiff" in making venue decisions). When, as in this case, "multiple causes of action are joined, venue must be proper as to each one." *Payne v. Mktg. Showcase, Inc.*, 602 F. Supp. 656, 658 (N.D. Ill. 1985).

With respect to plaintiff's contract claims, the Court considers a number of factors "including where the conduct underlying the breach occurred and where performance under the contract was to take place" to determine where a substantial part of the acts giving rise to the claim occurred. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1016 (E.D. Wis. 2000). The first group of alleged breaches about which plaintiff complains are James, Urick, Christian, H&H and T&H's failure to make payments under the franchise agreements and notes (Counts I-II, IV-V, VII). The franchise agreements all say they were "finalized" in Illinois (*see* Compl., Ex. A, Hixson Franchise Agreement ¶ 34; *id.*, Ex. D, Middletown Franchise Agreement ¶ 34; *id.*, Ex. H, Cleveland Franchise Agreement ¶ 34), but there is no dispute that the initial discussions about the franchises occurred in Tennessee, defendants actually executed the franchise agreements in Tennessee, and the franchises they operated were in Tennessee and Kentucky. (*See id.*, Ex. A, Hixson Franchise Agreement at 1 & ¶ 3; *id.*, Ex. D, Middletown Franchise Agreement at 1 & ¶ 3; *id.*, Ex. H, Cleveland Franchise Agreement at 1 & ¶ 3; Pl.'s Resp. Opp'n Mot. Dismiss James, Christian, Urick, H&H & T&H, Ex. A, James Dep. at 62-63, 67, 79-81, 91-93; *id.*, Ex. B, Urick Dep. at 43-45; *id.*, Ex. C, Christian Dep. at 39-41;) Moreover, the alleged omissions that gave rise to these claims – defendants' failure to remit the required payments – occurred in those states as well. (*See* Compl., Ex. A, Hixson Franchise

Agreement ¶ 11; *id.*, Ex. D, Middletown Franchise Agreement at ¶ 11; *id.*, Ex. H, Cleveland Franchise Agreement ¶ 11.) Thus, though some events related to the contract occurred in Illinois, and plaintiff may have felt the impact of the alleged breaches here, Illinois is not where a substantial part of the events underlying the contract claims occurred. *See Abramoff v. Shake Consulting, L.L.C.*, 288 F. Supp. 2d 1, 4-5 (D.D.C. 2003) (holding that the District of Columbia was not the proper venue for a contract action based on a breach that occurred in Florida, though the contract was executed in and plaintiff suffered the impact of the breach in the District of Columbia); *Fin. Mgmt. Servs., Inc. v. Coburn Supply Co., Inc.*, No. 02 C 8928, 2003 WL 255232, at \*2 (N.D. Ill. Feb. 5, 2003) ("[I]f economic harm to a plaintiff were really enough to satisfy Section 1391(a)(2), . . . a plaintiff could *always* bring suit at its home base on the premise that it has suffered harm there[,]" thus "eviscerating . . . [the other] part[s] [that] Congress has prescribed in the venue statute."). Therefore, the Court holds that it is not the proper venue for Counts I-II, IV-V and VII.

The same is true for plaintiff's claims against these defendants for breaching the covenants not to compete in the franchise agreements (Counts III and VI), breaching the provision that required them to assign the Middletown lease to Moran (Count IX) and trademark infringement (Count X). The acts that gave rise to these claims – defendants' operation of Masters Transmission in the facility formerly occupied by Mr. Transmission/Milex and their use of plaintiff's trademarks – all occurred in Kentucky. Because the acts that gave rise to the claims in Counts III-IV, IX and X did not occur here, this Court is not the proper venue for them. *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003) (holding that Georgia was the proper venue for Alabama company's claim that its Georgia-based salesman had breached his non-compete agreement because "the contract was breached when [the defendant] failed to perform his post-employment obligation to refrain from

11

competing . . . in Georgia"); *Woodke*, 70 F.3d at 985 (8th Cir. 1995) ("The place where the alleged [trademark infringement] occurred . . . provides an obviously correct venue."); *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 295 (3rd Cir. 1994) ("[T]he focus of our venue inquiry in a Lanham Act trademark infringement case is the location where the unauthorized passing off takes place . . . ."); *Abramoff*, 288 F. Supp. 2d at 4 ("[T]he fact that the plaintiff may feel damages [from a breach of contract] in the District of Columbia does not create venue under section 1391(a)(2)."); The Court, therefore, grants the motion of James, Christian, Urick, H&H & T&H to dismiss for improper venue.

## Motion of Karen & Masters Transmission

Plaintiff charges Karen with violating the Middletown franchise's non-compete clause (Count III) and tortious interference for her alleged inducement of T&H, James and Urick to breach the Middletown non-compete clause (Count VIII). In addition, plaintiff charges both Karen and Masters Transmission with trademark infringement (Count X). Even if the Court has personal jurisdiction over these defendants, an issue we need not decide,[2] their motion to dismiss would still be granted because a substantial part of the acts giving rise to these claims did not occur here.

Karen, an Indiana resident, is alleged to have violated the Middletown non-compete clause, tortiously interfered with the Middletown contract and, together with Masters Transmission,

---

[2]Because this Court is plainly not the right venue for these claims, the Court addresses only that issue, not defendants' arguments that personal jurisdiction is lacking. *See Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979) ("[W]hen there is a sound prudential justification for doing so, . . . a court may reverse the normal order of considering personal jurisdiction and venue.")

12

infringed plaintiff's trademarks by: (1) inducing T&H (an Indiana limited liability corporation comprised of a Kentucky resident and an Indiana resident), James (an Indiana resident), and Urick (a Kentucky resident) to operate Masters Transmission (a Kentucky corporation) in Kentucky; (2) participating in the operation of Masters Transmission in Kentucky; and (3) using plaintiff's trademarks in connection with the operation of Masters Transmission in Kentucky. Because none, let alone a substantial part, of the acts giving rise to these claims occurred in Illinois, this Court is not the proper venue for them. The Court, therefore, grants Karen and Masters Transmission's motion to dismiss for improper venue.

### Conclusion

For the reasons set forth above, the Court grants the motions to dismiss of James Higdon, Christian Higdon, Urick Thameling, Higdon & Higdon and Thameling & Higdon [doc. no. 14] and Karen Higdon and Masters Transmission [doc. no. 13]. All of the claims in this suit are dismissed without prejudice to refiling in an appropriate forum. This case is terminated.

**SO ORDERED.**                                 **ENTERED:**  6/26/08

_Ronald A. Guzman_
**HON. RONALD A. GUZMAN**
**United States District Judge**

13